**FILED**
United States Court of Appeals
Tenth Circuit

**August 31, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

SAGE ATHEAKEE GOMEZ,

    Defendant - Appellant.

No. 19-6155
(D.C. No. 5:18-CR-00259-G-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **BALDOCK**, and **CARSON**, Circuit Judges.
_____

Sage Atheakee Gomez appeals from the district court's judgment imposing a

sentence of 60 months' imprisonment. Exercising jurisdiction under 18 U.S.C.

§ 3742(a) and 28 U.S.C. § 1291, we affirm.

## BACKGROUND

Mr. Gomez is an enrolled member of the Ponca tribe. On September 15, 2018,

he visited a trailer home on Ponca tribe trust land. He wanted to trade a stolen

electronic tablet for methamphetamine with Brandon Warrior, an enrolled member of

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

the Tonkawa tribe who was staying at the trailer. Mr. Gomez had to leave before closing the deal, and he left the tablet charging in the trailer.

Mr. Gomez returned later that day to retrieve the tablet. The trailer's owner said Mr. Warrior was sleeping and Mr. Gomez was not welcome, but Mr. Gomez brushed past him to the living room and picked up a bottle near where Mr. Warrior slept. Mr. Warrior woke up and apparently thought Mr. Gomez was taking his liquor. There was a fistfight. According to Mr. Gomez, Mr. Warrior was aided by a third man, and the two of them were leaning over him and punching him on the couch; according to others, however, the fight was solely between Mr. Gomez and Mr. Warrior. Mr. Gomez had a club-like stick and a hunting knife with him. He pulled out the knife and stabbed Mr. Warrior, who later died of his wounds. After the stabbing, Mr. Gomez fled and hid the knife. He remained at large for more than a week before being apprehended.

Mr. Gomez pleaded guilty to one count of involuntary manslaughter in Indian country, in violation of 18 U.S.C. §§ 1112(a) and 1153. His advisory Guidelines sentence range was 24-30 months. The government argued in favor of an upward variance, which Mr. Gomez opposed. Determining that an upward variance was appropriate, the district court sentenced Mr. Gomez to 60 months' imprisonment. In support, the court stated:

> There are details about what happened that I cannot know with absolute certainty. What is clear, Mr. Gomez, is that you went to the Cries-For-Ribs house for the purpose of committing a crime, specifically, to acquire methamphetamine. You brought a knife and a stick with you. A

2

confrontation began and during the course of that fight, you pulled your knife and stabbed Mr. Warrior, killing him.

At the time you did not show remorse or try to help, instead you ran, you hid the knife and you hid out until you were caught.

Those facts alone and your extensive criminal history are enough to convince the Court that an upward variance is appropriate. I am sentencing you to 60 months imprisonment in light of the seriousness of this offense and in order to promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct and to protect the public from further crimes.

R. Vol. 3 at 100-01.

## DISCUSSION

Mr. Gomez asserts that the 60-month sentence is unreasonable. "Reasonableness review is a two-step process comprising a procedural and a substantive component." *United States v. Lente*, 759 F.3d 1149, 1155 (10th Cir. 2014) (internal quotation marks omitted).

## I.    Procedural Reasonableness

To the extent Mr. Gomez argues that his sentence is procedurally unreasonable, the government contends such arguments are barred by a provision in his plea agreement in which he waived the right to appeal "[his] sentence as imposed by the Court, including . . . the manner in which the sentence is determined." R. Vol. 1 at 37. Evaluating the factors set forth in *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam), we are satisfied that procedural-reasonableness arguments fall within the scope of the waiver. And Mr. Gomez does not contend that the waiver was unknowing and involuntary or that enforcement of the waiver would result in a miscarriage of justice. *See United States*

3

*v. Porter*, 405 F.3d 1136, 1143 (10th Cir. 2005) (stating that the court need not consider a *Hahn* factor that the defendant does not contest). We therefore enforce the appeal waiver and decline to consider arguments that bear solely upon procedural reasonableness, including any arguments that "the district court incorrectly calculate[ed] or fail[ed] to calculate the Guidelines sentence, treat[ed] the Guidelines as mandatory, fail[ed] to consider the § 3553(a) factors, relie[d] on clearly erroneous facts, or inadequately explain[ed] the sentence." *Lente*, 759 F.3d at 1156 (internal quotation marks omitted).

## II. Substantive Reasonableness

In contrast, the plea agreement reserved Mr. Gomez's "right to appeal specifically the substantive reasonableness of [his] sentence" if the district court imposed a sentence above the advisory Guidelines range. R. Vol. 1 at 37. This exception applies here because of the upward variance. We review substantive reasonableness for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). "We will find an abuse of discretion only if the sentence exceeded the bounds of permissible choice; that is, a defendant must show that the sentence was arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Garcia*, 946 F.3d 1191, 1211 (10th Cir. 2020) (citations and internal quotation marks omitted).

"Review for substantive reasonableness focuses on whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Sample*, 901 F.3d 1196, 1199

4

(10th Cir. 2018) (internal quotation marks omitted). "When conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.*

Noting that the variance doubled his sentence, Mr. Gomez argues that the sentence was substantively unreasonable because his conduct was within the heartland of the Guidelines; the district court did not adequately consider the circumstances of the offense, given that he was being attacked by two men and acted in self-defense; and the district court overemphasized his criminal history. But even the doubling of a relatively low Guidelines range does not necessarily mean the sentence is substantively unreasonable. *See Lente,* 759 F.3d at 1154, 1175 (upholding sentence that more than tripled Guidelines range); *United States v. Bullcoming*, 579 F.3d 1200, 1206-07 (10th Cir. 2009) (upholding sentence that doubled Guidelines range). To the extent Mr. Gomez asserts that the district court incorrectly weighed the § 3553(a) factors, "appellate courts must grant deference not only to a district court's factual findings but also to its determination of the weight to be afforded to such findings." *United States v. Gieswein*, 887 F.3d 1054, 1064 (10th Cir. 2018) (internal quotation marks omitted). Mere disagreement with the weight the district court gave various factors does not establish that a sentence is substantively unreasonable. *See United States v. Peña*, 963 F.3d 1016, 1025, 1026 (10th Cir. 2020); *see also Gall*, 552 U.S. at 51 (stating that the appellate court "must

5

give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance"). "We will not challenge the court's evaluation unless it finds no support in the record, deviates from the appropriate legal standard, or follows from a plainly implausible, irrational, or erroneous reading of the record." *Peña*, 963 F.3d at 1025 (brackets and internal quotation marks omitted). Mr. Gomez fails to establish any such infirmities.

Mr. Gomez quarrels with the district court's statement that his criminal history is "extensive." R. Vol. 3 at 101. But at the age of 23, he had enough points to place him in Criminal History Category III. His record reflects a "troubling tendency to abuse alcohol [and drugs] and violate the law." *Lente*, 759 F.3d at 1167. As Mr. Gomez points out, the majority of his offenses were misdemeanors, but as he further concedes, Mr. Warrior's killing occurred while he was under a five-year suspended sentence for felony burglary of an automobile. Notably, the record shows that the government moved to revoke that suspended sentence a few months before Mr. Warrior's killing, and that Mr. Gomez pleaded no contest to the motion to revoke, with his sentencing delayed pending the outcome of a drug court program. Apparently he failed the drug court program, however, with a warrant issuing just a month before Mr. Warrior's killing.

In sum, the district court was faced with an advisory Guidelines range of 24-30 months for a defendant who, in the course of seeking to trade stolen property for methamphetamine, entered the trailer against the owner's wishes, provoked a fight with a man who had been sleeping in his own (if temporary) home, then escalated

6

that fight by pulling a knife and wounding that man so severely that he later died. This defendant, who at age 23 rated a Criminal History score of III reflecting drug and alcohol issues, but who apparently had recently failed a drug diversion program, fled the scene, hid the knife, and remained a fugitive until apprehended. In light of all of the circumstances, we are not convinced that the 30-month upward variance was arbitrary, capricious, whimsical, or manifestly unreasonable.

## CONCLUSION

The district court's judgment is affirmed.

Entered for the Court

Joel M. Carson III
Circuit Judge